UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| KAITLYN WINSTEL | CIVIL ACTION NO. 12-2617 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Record Document 22) filed by Defendant, the City of Shreveport ("the City"). The City moves for dismissal of all remaining claims asserted by Plaintiff Kaitlyn Winstel ("Winstel"). See id. Winstel opposes the motion. See Record Documents 26.[1] For the reasons which follow, the Motion to Dismiss is **GRANTED** and all of Winstel's remaining claims against the City are **DISMISSED**.

**BACKGROUND**

On December 27, 2010, Winstel attending the Independence Bowl in Shreveport, Louisiana. See Record Document 1 at ¶ 9. Winstel and her boyfriend were leaving the Independence Bowl when he became embroiled in an argument with uniformed officers of the Shreveport Police Department. See id. He was arrested. See id. Winstel was then approached by Rick Seaton ("Seaton"). See id. She alleges that Seaton took her to City Hall, sexually assaulted her, and kept her against her will in the Mayor's Office. See id. at

---

[1] Winstel also filed a "Memorandum in Support of her Opposition to the City of Shreveport's Reply." See Record Document 35. This brief is a surreply for which leave of court was not sought. See Weems v. Hodnett, No. 10-1452, 2011 WL 2731263, *1 (W.D. La. July 13, 2011) ("No rule or notice employed in this division permits the filing of a surreply."). Additionally, even if leave of court had been sought, the undersigned would have denied the request because Winstel has failed to point out any "wholly new issues in the reply that demand a response" or "otherwise articulate[d] exceptional or extraordinary circumstances." Id. at *2. Accordingly, the Court hereby **STRIKES** Record Document 35.

¶¶ 7, 10.

At the time of this incident, Seaton served as the Assistant Chief Administrative Officer for the City of Shreveport. See id. at ¶ 32. The Mayor of Shreveport, Cedric Glover, learned of the sexual assault shortly after it was reported to the Shreveport Police, at which time he authorized another city employee to relay word to Seaton that he was "fired." Id.

Winstel filed her Complaint in federal court on October 2, 2012. See Record Document 1. As to the City, Winstel alleges:

> Defendant Seaton was known to his employers as being sexually active with other females outside of his marriage. It is on information and belief that the sexual activities of . . . Seaton were known or should have been to the City . . . and its officials that Seaton kept condoms and a "sex toy" in his desk/office, neither of which were used on or for his wife . . . .
>
> . . .
>
> Even though defendant . . . Seaton was known to his employer as being sexually active, . . . [the] City . . . failed to provide training and supervision of . . . Seaton in order to protect persons like petitioner from Seaton and the City . . ., in fact, tolerated his acts and practices towards women.
>
> As a result it became the "de facto" policy of the City . . . to ignore the predatory conduct of . . . Seaton towards young women.
>
> The foregoing "de facto" policy, custom and omission by the City . . . culminated with the foreseeable result that harm was done to the petitioner.

Id. at ¶¶ 42-46. In Count Four, Winstel outlines the "federal law liability of the City," alleging:

> Acting under color of law and pursuant to official policy or custom, the City . . . , through its officials, administrators, police supervisors and employees knowingly, recklessly, and with deliberate indifference and callous disregard for . . . Winstel's rights, failed to instruct, supervise, control, and discipline defendants, and those working in concert with them, on their duties relevant to this proceeding. The City . . . had the power to prevent the

> commission of these wrongs, could have done so by the exercise of reasonable diligence, and knowingly, recklessly, and with deliberate indifference and in callous disregard of . . . Winstel's rights, failed or refused to do so. The City . . . , directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of its officials, administrators, and employees.

Id. at ¶ 58.  Winstel also asserts "independent" state law claims against the City under the Louisiana Constitution and the Louisiana Civil Code Articles 2315, 2317, and 2320.  See id. at ¶¶ 63-65.  Winstel specifically describes her vicarious liability claim against the City:

> [Winstel] shows that at all times material to this Complaint, . . . [Seaton], and any other unnamed and/or unknown persons, were acting in their capacity as employees and/or agents of the City . . . , thereby rendering the City . . . liable for the acts of said defendants under the theories of agency, respondent superior, and/or vicarious liability for all causes and claims stated herein arising under the laws of the State of Louisiana.

Id. at ¶ 67.

## LAW AND ANALYSIS

**I.    Rule 12(b)(6) Standard.**

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted."  While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–1965 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007).  A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. The Supreme Court expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct.

1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2009). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Fernandez–Montes v. Allied Pilots Association, 987 F.2d 278, 284–285 (5th Cir.1993).

## II.   Prescription.

The viability of Winstel's negligent training, negligent supervision, and remaining Section 1983 claims[2] against the City turns on the appropriate prescriptive period to apply to such claims.  The City argues that the one year liberative prescription period found in Louisiana Civil Code Article 3492[3] is applicable to these claims.  Conversely, Winstel maintains that the two year liberative prescription period found in Louisiana Civil Code Article 3493.10[4] governs.

---

[2]Winstel's Section 1983 claims relating to the Eighth Amendment were dismissed by this Court in a previous ruling.  See Record Document 40.

[3]Article 3492 provides, in pertinent part:

Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.

[4]Article 3493.10 provides:

Delictual actions which arise due to damages sustained as a result of an act defined as a crime of violence under Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950 are subject to a liberative prescription of two years. This prescription commences to run from the day injury or damage is sustained.

### A. Negligence Claims Against the City.

Winstel alleges she was raped on December 27, 2010, but she did not file her Complaint until October 2, 2012. See Record Document 1. It is clear from the face of the Complaint that it was filed outside of the one year prescriptive period set forth in Article 3492. Winstel contends that Article 3493.10's two year prescriptive period applies to her claims.

Winstel has alleged that the City was negligent in its failure to provide training and supervision of Seaton in order to protect persons like her. See Record Document 1 at ¶ 44. She further contends that the City was negligent in that it tolerated Seaton's acts and practices towards women. See id. To determine the applicable prescriptive period for such claims, the Court looks to Louisiana case law.

In Johnson v. Littleton, 45,323 (La. App. 2 Cir. 5/19/10), 37 So. 3d 542, the plaintiff was a customer of a McDonald's restaurant and was involved in an altercation with an employee at the restaurant. See id. at 544. The plaintiff filed suit against the employee and the owner of a McDonald's restaurant. See id. She alleged that the owner/employer "was liable based on two theories of law: (1) [the owner's/employer's managers were negligent in hiring, training and supervising [the employee] and/or (2) [the employee's] attack occurred in the course and scope of her employment, causing [the owner/employer] to be vicariously liable for her actions." Id. On appeal, the Louisiana Second Circuit Court of Appeal upheld the trial court's conclusion that Article 3493.10 was inapplicable to the plaintiff's claims of negligent hiring, training, and supervision. See id. at 545-546. The court reasoned:

> As stated, [the plaintiff] maintains that because her damage arose from the act of violence committed by [the employee], article 3493.10 applies,

and her claims were subject to a two-year prescriptive period. We disagree.

> Article 3493.10 specifically states that it applies to "[d]elictual actions which arise due to damages sustained as a result of an act defined as a crime of violence...." Here, there are two different tortious acts that [the plaintiff] claims caused her damages: first, [the employee's] assault and battery and [the owner's/employer's] resultant vicarious liability for its employee's actions; and, second, [the owner's/employer's] alleged negligent hiring, training, and supervision of [the employee]. There is no question that the claims of negligent hiring, training, and supervision against [the owner/employer] are separate and apart from the "act defined as a crime of violence." They stand independently on their own.
>
> When we dissect this litigation, it is evident that although there is the seminal act by [the employee] which precipitated [the plaintiff's] lawsuit, there are two separate theories of law being advanced by [the plaintiff] against two separate tortfeasors. [The plaintiff] claims damages by [the owner/employer] not only for the intentional acts committed by [the employee], but for [the owner's/employer's] alleged negligent hiring, training, and supervision of [the employee]. . . . In Boland v. Kleinpeter, 2001–3287 (La.06/21/02), 820 So.2d 489, the supreme court reasoned that the individual actions of the joint tortfeasors should be considered and not the entire action against both tortfeasors for the application of the two-year prescription of Article 3493.10. We apply the same reasoning here and conclude that the trial court correctly sustained [the owner's/employer's] exception of prescription as it pertained to the [plaintiff's] claims of negligent hiring, training, and supervision.

Id.

Here, the City does not dispute that the alleged actions of Seaton constitute a crime of violence. See Record Document 28 at 3. Yet, according to Johnson, Winstel's claims against the City relating to its failure to provide a safe environment and/or its failure to train/supervise are "separate and apart" from the alleged sexual assault committed by Seaton. See Johnson, 37 So. 3d at 545. The City's alleged actions/inactions stand independently on their own and must be considered individually when determining the applicability of Article 3493.10. See id. at 545-546. Thus, Winstel's negligence claims against the City are prescribed, as the two year liberative prescriptive period found in Article 3493.10 is inapplicable.

B.   **Remaining Section 1983 <u>Monell</u> Claims Against the City.**[5]

In <u>Owens v. Okure</u>, 488 U.S. 235, 249-250, 109 S. Ct. 573, 582 (1989), the Supreme Court held "that where state law provides multiple statutes of limitations for personal injury actions, courts considering §1983 claims should borrow the general or residual statute for personal injury actions." Applying <u>Owens</u>, a federal district court within the Western District of Louisiana reasoned:

> Conversely, there is ample authority supporting defendants' argument that even if the alleged conduct could be considered a crime of violence, under <u>Owens</u> . . . , Louisiana Civil Code Article 3492 provides the applicable limitations period. In <u>Owens</u>, the United States Supreme Court faced the issue of whether to apply the intentional torts approach or the residual personal injury approach in a § 1983 action brought by an individual who alleged that state university police had beaten him after arresting him without cause. <u>Id.</u> The Supreme Court ruled that district courts are directed to apply the "residual or personal injury statute of limitations." <u>Id.</u> Under <u>Owens</u>, even if the conduct alleged could be characterized as a crime of violence, Article 3493.1 is inapplicable, and the applicable prescriptive period for plaintiff's alleged claims against the City and Chief Fontenot is dictated by Louisiana Civil Code Article 3492.

<u>Savoy v. St. Landry Parish Council</u>, No. 08-232, 2009 WL 4571851 (W.D. La. Dec. 1, 2009); <u>see also</u> <u>Vallery v. City of Baton Rouge</u>, No. 2011-1611, 2012 WL 2877599 (La. App. 1 Cir. 5/3/12), <u>writ denied</u>, 2012-1263 (La. 9/28/12), 98 So. 3d 837 ("To the extent that Vallery's petition states a cause of action for a civil rights violation under 42 U.S.C. § 1983, the one-year prescriptive period of Article 3492 is also applicable.").

Pursuant to the aforementioned cases, this Court finds that Winstel's remaining Section 1983 claims against the City are prescribed. The two year prescriptive period

---

[5]Count Four is entitled "FEDERAL LAW LIABILITY OF THE CITY" and alleges that the City, "acting under color of law and pursuant to official policy or custom, . . . knowingly, recklessly, and with deliberate indifference and callous disregard for . . . Winstel's rights, failed to instruct, supervise, control, and discipline defendants." Record Document 1 at ¶ 58.

invoked by Winstel simply does not apply, as it is well settled that her Section 1983 claims borrow Article 3492's one year prescriptive period.

### III.   Vicarious Liability Claim Against the City.

The City concedes that Winstel's vicarious liability claim against the City is not prescribed.  See Record Document 22-1 at 4; Record Document 28 at 5.  Notwithstanding, the City moves for dismissal of the vicarious liability claim under Rule 12(b)(6).

As to her vicarious liability claim, Winstel alleges that "defendants . . . were acting in their capacity as employees and/or agents of the City . . ."  Record Document 1 at ¶ 67.  Conversely, the City argues that the vicarious liability claim must be dismissed, as Winstel's rape cannot be plausibly construed as an act in furtherance of any objective of the City.  See Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (holding that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face).  In opposing the Motion to Dismiss, Winstel addresses "Vicarious Liability/Respondeat Superior Under § 1983"; however, she simply references cases applying Monell in the context of the alleged failure to investigate, train, supervise, and discipline Seaton.  See Record Document 26-1 at 5-7.[6]  She does not analyze or discuss any Louisiana state law cases involving vicarious liability.  See id.

In Baumeister v. Plunkett, 95-2270 (La. 5/21/96), 673 So. 2d 994, the Louisiana Supreme Court reviewed "whether the court of appeal correctly held a hospital vicariously liable for the sexual battery committed by one of its supervisors upon a co-employee during working hours on the hospital's premises."  Id. at 995.  The Louisiana Supreme Court

---

[6]The claims referenced by Winstel are the prescribed negligence and/or Section 1983 claims discussed supra.

stated:

> The law in this area is clear that an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment. The course of employment test refers to time and place. The scope of employment test examines the employment-related risk of injury.
>
> . . . In fact, this Court has held that in order for an employer to be vicariously liable for the tortious acts of its employee the tortious conduct of the employee must be so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest.
>
> An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective.

Id. at 996 (internal citations and quotations omitted). In determining whether to hold an employer vicariously liable, courts are to consider four factors:

(1)   whether the tortious act was primarily employment rooted;

(2)   whether the violence was reasonably incidental to the performance of the employee's duties;

(3)   whether the act occurred on the employer's premises; and

(4)   whether it occurred during the hours of employment.

Id. at 996-997, citing LeBrane v. Lewis, 292 So.2d 216, 218 (La. 1974); see also Johnson, 37 So.2d at 547 ("Generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer.").

Applying these principles, the Baumeister court held that even though the sexual

assault occurred on the employer's premises and during the hours of employment, there was no vicarious liability because the tortious act was not primarily employment rooted and the assault was not reasonably incidental to the performance of official duties. Id. at 999-1000. The court noted that "a nursing supervisor's responsibilities do not include sexually oriented physical contact with a co-employee." Id. at 999. Additionally, it was not "foreseeable from the perspective of the hospital that such conduct will take place on hospital premises during working hours." Id. The court concluded that "under the specific facts of this case [the] sexual assault was entirely extraneous to [the] employer's interests." Id. at 1000.

In Crawford v. Wal-Mart Stores, Inc., No. 10-805, 2011 WL 3206196 (M.D. La. July 27, 2011), the court granted the defendant's Rule 12(b)(6) motion as to the vicarious liability claim arising from an employee striking a customer. The court reasoned that dismissal was appropriate because "the allegations do not indicate that the battery was, in any way, employment-rooted or incidental to the Wal-Mart employee's duties." Id. at *2. The Crawford court went on to state:

> Put another way, Crawford's vicarious liability claim does not have facial plausibility because the facts alleged do not allow the Court to draw a reasonable inference that Wal-Mart is liable for the misconduct alleged. Since there is no allegation that the employee's action was incidental to or motivated in any way by his employment duties with Wal-Mart, the court cannot conclude that Wal-Mart should be held vicariously responsible for such conduct.

Id. at *2, n. 4.

Here, the alleged sexual assault took place on the employer's premises, but not during regular business hours. See Record Document 1. More importantly, other than the conclusory allegation that Seaton was acting in his capacity as an employee and/or agent

of the City, Winstel has not alleged how Seaton's actions were primarily employment rooted or were incidental to or motivated in any way by his employment duties with City. See Record Document 1 at ¶ 67; see also Fernandez–Montes, 987 F.2d at 284–285 ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"). There are no factual allegations in the Complaint showing how Seaton's actions were activated at least in part by a purpose to serve his employer. Rather, his actions were completely extraneous and were in no way incidental to his duties as the City's Assistant Chief Administrative Officer. See Sanborn v. Methodist Behavioral Resources Partnership, 2003-0627 (La. App. 4 Cir. 1/14/04), 866 So.2d 299, 305; see also Rambo v. Webster Parish Sch. Bd., 745 So.2d 770, 774 (La. App. 2 Cir. 1999) (the likelihood that a school janitor would sexually molest a student "is not a risk fairly attributable to the performance of his custodial duties"); Jackson v. Ferrand, 658 So.2d 691, 696 (La. App. 4 Cir.1994) (finding that an employee's sexual assault of the plaintiff "was not so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business"); Pearson v. IHOP, No. 09-3071, 2010 WL 971798, *4 (E.D.La. Mar. 10, 2010) (finding that the employee's "despicable interests were extraneous to any interests of his employers and not designed to serve them in any way"); McKnight v. Madison Parish School Bd., No. 07-0030, 2009 WL 1409853, *10 (W.D.La. May 20, 2009) (holding that even if the employee had sexually assaulted the plaintiff, the employee's actions "were not reasonably incidental to the performance of his employment duties"). Applying the aforementioned Louisiana case law to this facts of this case, the Court finds that the Complaint lacks any factual allegations showing that Seaton's actions could plausibly be construed as an act in furtherance of any

objective of the City. Accordingly, Winstel's vicarious liability claim must be dismissed.

## CONCLUSION

Based on the foregoing analysis, the Court finds that Winstel's negligence claims and remaining Section 1983 claims are prescribed, as the two year liberative prescription period set forth in Article 3493.10 is inapplicable to the claims against the City. Additionally, the Court finds that Winstel's vicarious liability claim against the City fails because the Complaint does not contain sufficient factual matter to state a claim to relief that is plausible on its face.

Accordingly,

**IT IS ORDERED** that the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Record Document 22) filed by the City be and is hereby **GRANTED**. All of Winstel's remaining claims against the City be and are hereby **DISMISSED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 11th day of September, 2013.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE